# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

GULF OFFSHORE LOGISTICS, LLC, )
                                 )

    Plaintiff, )

                                 )

v. ) CIVIL ACTION 09-0688-WS-N

                                 )

THOMAS B. BENDER, JR., )

                                 )

    Defendant. )

## ORDER

This matter is before the Court on the plaintiff's motion for summary judgment. (Doc. 31). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 32-37, 44, 50), and the motion is ripe for resolution.[1] After carefully considering the foregoing and other relevant material in the file, the Court concludes that the motion is due to be denied.

## BACKGROUND

According to the complaint, the plaintiff entered an agreement ("the Letter Agreement") with Bender Shipbuilding & Repair, Inc. ("Bender"), pursuant to which the plaintiff paid to Bender $1 million to hold the delivery date and production capacity for construction of a $43 million vessel, pending further negotiation towards a contract for construction of the vessel. The Letter Agreement provided that, should the plaintiff for specified reasons not proceed to contract with Bender, the $1 million would be returned to the plaintiff. In connection with this agreement, the defendant executed a personal guaranty ("the Guaranty"). The plaintiff did not proceed to contract with Bender.

---

[1] The defendant's motion to stay, (Doc. 51), which offers modest factual grounds and no legal analysis, is **denied**.

Bender returned $400,000 to the plaintiff, but the principal sum of $600,000 remains unpaid.  In this litigation, the plaintiff seeks to recover the balance, plus interest, costs and attorney's fees, from the defendant based on the  Guaranty.  (Doc. 1 & Exhibits A, B).

## DISCUSSION

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).  "If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made. [citation omitted] If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact."  *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993).  "If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment."  *Clark*, 929 F.2d at 608  (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted).

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. [citation omitted] In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof, no reasonable jury could find for the nonmoving party."  *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (emphasis in original); *accord Fitzpatrick*, 2 F.3d at 1115.  "For issues on which the movant would bear the burden of proof at trial, the non-movant, in order to avoid summary judgment, must come forward with evidence

sufficient to call into question the inference created by the movant's evidence on the particular material fact." *Id*. at 1116.

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).

"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). Accordingly, the Court's review is limited to those legal arguments the parties have expressly advanced.

The Guaranty provides in pertinent part as follows:

> Guarantor, subject to the limitations set forth herein, does hereby guarantee to [the plaintiff] the collection of a payment of $1,000,000.00 made by [the plaintiff] to Bender under the Letter Agreement, provided however, that this Guaranty is a guarantee of collection only so that upon the occurrence of any default under the Letter Agreement, [the plaintiff] shall first take all necessary, reasonable and legal actions including exercise of any remedies provided to [the plaintiff] under the Letter Agreement to collect so much of the sums guaranteed hereby as can be obtained by diligent pursuit of such actions from Bender before making demand of Guarantor under this Guaranty.

(Doc. 34, Exhibit C).

The parties agree that the language of the Guaranty makes it a conditional guaranty. "A conditional guaranty is one which is not immediately enforceable against the guarantor upon default of the principal but one in which the creditor must take some action in order that liability arise." *Shur-Gain Feed Division v. Huntsville Production Credit Association*, 372 So. 2d 1317, 1320 (Ala. Civ. App. 1979).

The parties also agree that the Guaranty is, as it says it is, a guaranty of collection only. "In a conditional guaranty, such as a guaranty of collection, the guarantor agrees to pay a debt only if the claim is not, after exercise of every reasonable effort on the part of the creditor, collectable from the principal." *Shur-Gain*, 372 So. 2d at 1320. "[L]iability arises only after the creditor diligently but unsuccessfully pursues its remedies against the

[3]

debtor." *Id*. at 1321. The guarantor's agreement is to pay the obligor's debt "after the plaintiffs had used all means in their power, which were reasonable and proper, to coerce payment out of [the obligor]." *Walker v. T. & G. Forbes*, 25 Ala. 139, 146 (Ala. 1854) (cited in *Shur-Gain*). "[W]hile yet his remedies were available, it was necessary, as a condition of [the guarantor's] liability, that [the obligee] should have resorted to them, for otherwise the guaranty, contrary to the intent of the parties, would become absolute rather than a guaranty of collection." *Russell v. Garrett*, 85 So. 420, 423 (Ala. 1920) (cited in *Shur-Gain*).

These cases describe what a conditional guaranty of collection is generally under Alabama law, but the Guaranty itself articulates the condition this particular plaintiff must satisfy prior to seeking recovery from this particular defendant. The Guaranty requires the plaintiff to "take all necessary, reasonable and legal actions" to collect from Bender, which is at least as demanding as exercising "every reasonable effort" or using "all [reasonable and proper] means." Moreover, the Guaranty requires that these actions be taken "to collect so much of the sums guaranteed hereby as can be obtained by diligent pursuit of such actions." That is, the plaintiff must first take all necessary, reasonable and legal actions against Bender even if those actions will result in only a partial recovery of the debt.

The plaintiff says it satisfied this condition because it made "numerous demands" of Bender to repay the money between November 2008 and June 2009. (Doc. 32 at 13). The only document to which the plaintiff cites it its December 5, 2008 termination letter. The plaintiff also relies on the affidavit of its chief financial officer, who echoes that the plaintiff "made numerous demands" for return of its deposit. (Doc. 34, Exhibit A at 3, ¶ 11). He cites only the termination letter, and he does not give the number of demands provided or describe their content, tone or author. On this record, there is no basis for the Court to conclude that the plaintiff did anything more than send one brief letter "requesting the return of the $1,000,000.00 deposit paid to Bender within five business days of the date of this letter," (*id*., Exhibit D), and make one or more equally civil, non-threatening verbal requests for return of the funds. The plaintiff does not explain, and the

[4]

Court cannot fathom, how such a tepid approach could even possibly satisfy the condition that the plaintiff "take all necessary, reasonable and legal actions" to collect from Bender.

On June 9, 2009, several creditors of Bender filed an involuntary bankruptcy petition under Chapter 7. On July 1, 2009, the case was converted to a Chapter 11 reorganization proceeding, which remains pending. The plaintiff argues that, once Bender was placed in bankruptcy, it had no further obligation to pursue Bender before pursuing the defendant. (Doc. 32 at 12). It believes that *Shur-Gain* supports its position, but it does not. In *Shur-Gain*, the plaintiff sought to collect its debt from the obligor, who responded by filing for bankruptcy and receiving a discharge; only then did the plaintiff proceed against the conditional guarantor. 372 So. 2d at 1319. Far from excusing obligees from pursuing obligors in bankruptcy, the *Shur-Gain* Court stated that "an effort to salvage its claim in the bankruptcy action" was an "available remedy" to the obligor. *Id*. at 1321-22. As noted, under *Russell* (which *Shur-Gain* cited), an "available remedy" is one that must be pursued against the obligor before proceeding against the conditional guarantor. 85 So. at 423.[2] Under *Shur-Gain*, then, an obligee must seek to "salvage its claim in the bankruptcy action" before it can proceed against a conditional guarantor. Bender's bankruptcy did not excuse the plaintiff from further efforts to collect from Bender before suing the defendant.

Under *Walker*, an obligee can avoid taking further enforcement actions against the obligor if it "show[s] that the use of such means would have been unavailing, by reason of [the obligor's] insolvency or from some other cause." 25 Ala. at 146. In light of *Shur-Gain*, this cannot mean that the mere fact of a bankruptcy filing excuses further efforts, but it does suggest that an adequate showing that the bankruptcy will leave the debtor unable to repay the obligee could do so. The plaintiff posits that "the circumstances of these proceedings indicate a reasonable conclusion that there will be little or no assets left

---

[2] The plaintiff acknowledges that it must exercise "all available remedies." (Doc. 50 at 3).

to cover [the plaintiff's] debt once the case concludes," (Doc. 50 at 2), but it has not identified any evidence that could support such a conclusion, much less establish it as uncontroverted for purposes of motion for summary judgment.[3] The plaintiff also ignores that the Guaranty requires it to pursue Bender first even if only a portion of the debt could be recovered as a result, so even a likelihood that bankruptcy would net the plaintiff, say, only ten cents on the dollar would not excuse the plaintiff from the condition precedent imposed by the Guaranty.[4]

The plaintiff notes that it has participated in the bankruptcy proceedings by: (1) attending a meeting of creditors; (2) requesting discovery and document production; (3) objecting to motions filed by Bender; (4) appearing at various hearings; and (5) filing a proof of claim. (Doc. 32 at 13). The plaintiff argues that *Shur-Gain* requires it only to "exercise" reasonable collection efforts, not "exhaust" them, and it suggests that its listed efforts constitute a sufficient exercise even though the bankruptcy proceeding remains alive and well, its outcome unknown. (Doc. 50 at 3). Nothing in *Shur-Gain*, however, supports the proposition that an obligor may dabble with collection and then quit midstream; on the contrary, *Shur-Gain* requires the obligor to "diligently" pursue its remedies, 372 So. 2d at 1320, as does the Guaranty, explicitly. The obligee in *Shur-Gain* did not pursue the conditional guarantor until after the obligor's debt to the obligee was discharged in bankruptcy, and nothing in *Shur-Gain* suggests the obligee could have properly pursued the guarantor any sooner.

The plaintiff objects that the defendant has not provided law or evidence disproving the plaintiff's right to proceed. (Doc. 50 at 2, 3, 7). The defendant did in fact

---

[3] The plaintiff merely cites generally to a schedule of unsecured creditors. There are quite a few of them, but the schedule does not identify how much each is owed, much less suggest the scope of Bender's assets available to pay them and any secured creditors. It is simply impossible on this record to conclude that pursuit of Bender in bankruptcy will be unavailing, even in part.

[4] The plaintiff cites cases from Montana, New York and Kansas. The Guaranty is governed by Alabama law and its own terms, and neither can be avoided by resort to the law of other jurisdictions.

quote the relevant portions of *Walker*. (Doc. 44 at 4). More fundamentally, the initial burden is on the plaintiff to establish its entitlement to summary judgment; it is not on the defendant to refute it. *Fitzpatrick*, 2 F.3d at 1115. Since the plaintiff has not carried its burden, no burden has ever rested on the defendant. *Id*. at 1116.

Because the plaintiff has not met its burden as to this element of its case, the Court does not address the remaining elements, nor the defendant's affirmative defense.

## CONCLUSION

For the reasons set forth above, the plaintiff's motion for summary judgment is **denied**.

DONE and ORDERED this 3rd day of September, 2010.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE